UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA SUMMERFIELD,
    Plaintiff,

v.

FRANKLIN COUNTY CORONER'S
OFFICE, et al.,
    Defendants.

Case No.: 2:11-cv-452
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendant Franklin County Coroner Jan Gorniak's Motion for Summary Judgment. (Doc. No. 23.) For the reasons that follow, the Court **GRANTS** Defendant's Motion.

### I.

The Franklin County Coroner's Office hired Plaintiff as a forensic technician on October 7, 2002. As a forensic technician, one of Plaintiff's job responsibilities was releasing decedents' bodies to funeral homes. On May 19, 2010, Plaintiff released the body of J.T., a 14 month old boy, without obtaining a Body Release Form. The body was released to the Marlan Gary Funeral Home. The Funeral Home cremated J.T.'s body, which was against the wishes of his family.

On May 23, 2010, the Franklin County Coroner, Dr. Jan Gorniak ("Defendant or Dr. Gorniak"), went to J.T.'s family and apologized for the mistake. The family contacted the media. The media contacted Dr. Gorniak and requested a copy of Plaintiff's personnel file. Dr. Gorniak provided the file to the media. Dr. Gorniak issued two press releases related to the incident.

Also on May 23, 2010, Dr. Gorniak began to investigate this matter. Dr. Gorniak placed

Plaintiff on paid administrative leave pending the pre-disciplinary hearing that was scheduled for May 26, 2010.

After the May 26, 2010 hearing, Dr. Gorniak terminated Plaintiff for her "failure to perform her job assignments satisfactorily, safely, and efficiently" in violation of the Coroner's Office Standards of Conduct. (Pl. Dep. Ex. P; Doc. No. 24-17.) The Order of Removal specified that Plaintiff failed "to follow the 'Body Release' procedure listed on page 15 of the Franklin County Policy and Procedure Manual by failing to obtain 'a Body Release Form signed by the decedent's next of kin' (released [J.T.] without a signed Body Release Form)." *Id.*

On May 24, 2011, Plaintiff filed this lawsuit against Dr. Jan Gorniak, in her personal and official capacity, and against the Franklin County Coroner's Office ("the Coroner's Office"). Plaintiff subsequently filed a stipulation of dismissal of the Coroner's Office as a party to the suit. (Doc. No. 9.) The Complaint asserts claims for relief for: (1) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, against Defendant in her official capacity and in violation of the Ohio Revised Code Chapter 4112 against Defendant in her official and personal capacities (Counts One and Two); (2) sex discrimination in violation of Title VII the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* against Defendant in her official capacity and in violation of the Ohio Revised Code Chapter 4112 against Defendant in her official and personal capacities (Counts Three and Four); (3) destruction of public records in violation of the Ohio Revised Code § 149.351 against Defendant in her official capacity (Count Five); and (4) defamation and false light invasion of privacy against Defendant in her personal capacity (Counts Six and Seven).

On October 17, 2012, Defendant filed her motion for summary judgment (Doc. No. 23),

2

and on November 6, 2012, Plaintiff filed her memorandum in opposition to Defendant's motion (Doc. No. 28). In Plaintiff's opposition memorandum, she withdraws her claims for disability discrimination. (Pl. Mem. in Opp. at 3) ("In discovery in this case the claims that were supported centered upon disparate treatment on the basis of sex, public records destruction, defamation and false light invasion of privacy."). Defendant filed her reply brief on November 30, 2012. (Doc. No. 35.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is

3

such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

## III.

Defendant moves for summary judgment on all of Plaintiff's claims.

### A. Sex Discrimination

Plaintiff alleges that Dr. Gorniak discriminated against her based on her sex when she terminated her employment. To establish an employment discrimination claim under Title VII or Ohio law, "a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) (citation omitted); *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). Where, as here, a plaintiff fails to present direct evidence of discrimination, the burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), applies. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (discrimination in violation of Title VII); *Plumbers & Steamfitters Joint Apprenticeship Commt.*, 66 Ohio St.2d at 197 (discrimination in violation of Ohio law). Under that paradigm, a plaintiff must first present a *prima facie* case of discrimination. "Once the *prima facie* case is made, a defendant may offer any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by evidence

4

of pretext; however, the burden of proof always remains with the plaintiff." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).

### 1. *Prima facie* case

To establish a *prima facie* case of discrimination, Plaintiff must show that (1) she was a member of the protected category at time of the alleged discrimination, (2) she was subjected to an adverse employment action, (3) she was otherwise qualified for the position, and (4) she was "'replaced by a person outside of the protected class. . . . the fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)) (alteration in original). Defendant concedes that Plaintiff meets the first three prongs of this inquiry, but disputes her contention that she was treated less favorably than similarly situated male employees who engaged in the same conduct.

As to that inquiry, the Sixth Circuit "first explained in *Mitchell*, 'it is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated in all respects.'" *Clayton*, 281 F.3d at 610-11 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original)). "As further explained in *Ercegovich*, 'the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated"; rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects.'" *Id.* at 611 (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original) (citation omitted)). Finally, in *Perry*, the Sixth Circuit "explained that 'this Court has

5

asserted that in applying the standard [that plaintiff must show that she is treated less favorably than similarly situated employees from outside the protected class] courts should not demand exact correlation, but should instead seek relevant similarity.'" *Id.* (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).

In the case *sub judice*, Plaintiff compares herself to James Stanforth and Greg Kessler, two male forensic technicians. Plaintiff maintains that several months before she released J.T.'s body without a Body Release Form, these two employees engaged in the same conduct and were not disciplined in any way. Defendant concedes that Stanforth and Kessler shared the same supervisor and were subject to the same standards as Plaintiff. Defendant points out that the evidence shows that Stanforth did receive a written warning for his conduct. Defendant, however, maintains that it is irrelevant whether these comparators received discipline or not because their conduct was not comparable to Plaintiff's conduct. This Court agrees.

It is well established that Plaintiff may obtain relief under Title VII, even if she engaged in serious misconduct, provided that employees in non-protected categories who engage in the same conduct were either not disciplined or not disciplined as severely. *Clayton*, 281 F.3d at 611 (citing *McDonnell Douglas*, 411 U.S. at 804). "As further explained in *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273 (1976), 'the ultimate . . . question as we indicated in *McDonald Douglas*, [is whether] an allegation that 'other employees involved in acts against (the employer) of *comparable seriousness* . . . were nevertheless retained . . . .'" *Id.* (emphasis and omissions in original; parallel citation omitted). The "employees to whom the plaintiff seeks to compare h[er]self must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employers treatment of them for it.'"

6

*Id.* (citing *Mitchell*, 964 F.2d at 583).

With regard to Plaintiff's conduct in the present case, it is undisputed that she released J.T.'s remains without a signed Body Release Form and that the Funeral Home to which she released the remains cremated them.

With regard to the conduct of Stanforth and Kessler, it is undisputed that the Coroner's Office received a Body Release Form for a decedent's body ("R.L") from Frank E. Hill Funeral Home. The Body Release Form had been properly completed by R.L.'s next of kin, and it indicated that R.L.'s body was to be released to the Frank E. Hill Funeral Home. Stanforth misread the Body Release Form as Frank E. Smith Funeral Home. Stanforth telephoned the Frank E. Smith Funeral Home to retrieve R.L.'s remains. The Frank E. Smith Funeral Home dispatched a staff member to transport R.L. When that staff person arrived, he asked Kessler for R.L.'s body. Kessler confirmed that there was a Body Release Form for R.L. and released the body to the Frank E. Smith Funeral Home at 2:45 p.m. At 5:30 p.m. that same day, a staff person from the Frank E. Hill Funeral Home arrived at the Coroner's Office to pick up R.L.'s body, which had already been released. At that time, Stanforth sent a transport staff to retrieve R.L's body from the Frank E. Smith Funeral Home. When Kessler reported in writing the incident to Dr. Gorniak, he mistakenly recited that he released the body to the Frank E. Hill Funeral Home, again mixing up the Hill and the Smith funeral homes.

Defendant argues that the conduct at issue is not comparable because, *inter alia*, Stanforth and Kessler released a decedent's body for which the Coroner's Office had a properly executed Body Release Form on file and Plaintiff released J.T.'s body despite having no Body Release Form authorizing her to do so. In Plaintiff's memorandum in opposition, she argues that

7

"Defendant tries to make a technical issue in the defense of two male employees' conduct resulting in a body ending up at a Funeral Home that had no release form for that body." (Pl. Mem. in Opp. at 7.) Plaintiff's argument is not well taken.

Plaintiff's emphasis on whether the funeral home possessed the paperwork it is required to have is of no moment here. That is, the Coroner's Office is not responsible for the actions of the funeral home. It is, however, responsible for whether its office is in possession of the proper documentation before its employees act.

As to the employees of the Coroner's Office, Stanforth and Kessler merely misread the Body Release Form; however, they followed the required procedure of not releasing a body without such a Form. Plaintiff utterly failed to follow the required procedure. The Coroner's Office requires a technician to have in his or her possession a Body Release Form signed by a next of kin before a body can be released. Stanforth and Kessler had in their possession a properly executed Body Release Form for R.L's body before they released it. Contrarily, Plaintiff did not have a Body Release Form for J.T.'s body when she released it. Stanforth's and Kessler's mistake in misreading Frank E. Hill Funeral Home as Frank E. Smith Funeral Home on the Body Release Form is of a less serious nature than Plaintiff's complete failure to confirm whether there was a Body Release Form for J.T. before releasing his body.

In Plaintiff's memorandum in opposition, she also argues that the conduct of Stanforth and Kessler must be considered the same as her conduct because "[i]t is only a matter of the fortuitous lack of any action by the Frank Smith Funeral home that makes this case different, nothing else." (Pl. Mem. in Opp. at 8.) Defendant, however, in its reply brief indicates that:

While there is no question that Plaintiff's failure to follow the body release procedure

8

> and to perform her job assignments in a safe, efficient, and satisfactory manner was the first event in the chain of events that lead to [J.T.]'s body being improperly cremated, Defendant did not terminate Plaintiff because [J.T.]'s body was improperly cremated. Rather, as Defendant has consistently maintained, she terminated Plaintiff because there was no Body Release Form authorizing the release of [J.T.]'s body at the time Plaintiff released the body . . . .

(Def. Reply at 6) (footnote omitted). Consequently, the issue of whether the cremation of J.T.'s body provides circumstances sufficient to distinguish Plaintiff's conduct from her coworkers' conduct is not before the Court.

While the similarly situated analysis is often fact dependent and not amenable to summary disposition, that analysis does not preclude summary judgment here. *See Clayton*, 281 F.3d at 612 (finding same). The undisputed facts in this case demonstrate that Plaintif's infraction was qualitatively more serious than those of her two coworkers. Her employer's more severe treatment of more egregious circumstances simply cannot give rise to an inference which would support the establishment of a *prima facie* case of discrimination.

### 2. Legitimate Nondiscriminatory Reason for Termination and Pretext

Even if Plaintiff had presented a *prima facie* case of discrimination, Defendant has articulated a legitimate nondiscriminatory reason for terminating her, which she has not shown to be pretextual. Defendant contends that she terminated Plaintiff for poor performance. (Pl. Dep. Ex. P; Doc. No. 24-17.) "Poor performance is a legitimate, nondiscriminatory reason for terminating a person's employment and, by articulating such a reason, [Defendant] met its initial burden under the *McDonnell Douglas/Burdine* framework." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 546 (6th Cir. 2008).

The burden now shifts to Plaintiff to show that Defendant's proffered reason for

9

terminating her was a pretext for unlawful discrimination. In the Sixth Circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) *overruled in part by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "To carry her burden in opposing summary judgment, [Plaintiff] must produce sufficient evidence from which a jury could reasonably reject [Defendant's] explanation of why it fired her." *Id.* (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526) (6th Cir. 2008); *St. Mary's Honor Ctr.*, 509 U.S. at 515 (defendant's proffered reason cannot be proved to be a pretext "unless it is shown both that the reason was false, and that discrimination was the real reason").

Plaintiff argues that "[s]hould the jury hear this evidence [of disparate treatment of similarly situated male employees] they could well decide that the explanation for taking absolutely no disciplinary action against Messrs. Stanforth and Kessler is pretext compared to the circumstances for firing Ms. Summerfield." (Pl. Mem. in Opp. at 9.) This type of evidence is proof of the third type of pretext delineated above, *i.e.*, whether Defendant's stated reason for terminating Plaintiff was sufficient to motivate Defendant's action. *See Manzer*, 29 F.3d at 1084 ("evidence that other employees . . . were not [disciplined or terminated] even though they engaged in substantially identical conduct to that which the employer contends motivated its [discipline and termination] of the plaintiff").

Here, the Court has already determined that Plaintiff has failed to raise any issue of

10

material fact as to whether she was treated less favorably than her coworkers with whom she seeks to compare herself. Consequently, Plaintiff has failed to meet her burden to show that Defendant's proffered reason for terminating her was a pretext for unlawful discrimination.

## B. Remaining State Law Claims

Because the Court disposes of all of Plaintiff's federal claims by this Opinion and Order, the Court declines to exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's state law claims are **DISMISSED** without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

### IV.

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 23.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant.

**IT IS SO ORDERED.**

4-23-2013
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

11